PROVOSTY, J.
Plaintiff is a refiner of cotton seed oil at Louisville, Ky. Defendant is a manufacturer of cotton seed oil at Shreveport, La. Defendant sold and contracted to deliver to plaintiff, at Louisville, 30 tanks of cotton seed oil of the prime grade. The contract expressly stipulated that “the weights and quality of the oil were guaranteed at destination, Louisville, Kentucky,” and that “the contract was made subject to the rules of the Interstate Cotton Seed Crushers’ Association, with arbitration at Memphis Merchants’ Exchange, Memphis, Tennessee.” Under these rules, parties who cannot agree must arbitrate.
The oil was not forwarded all at one time, but in broken shipments through the months of November, December, and January; the first shipment being on the 31st of October, and the last on the 25th of January. It was shipped subject to the order of the shipper, with draft attached to the bill of lading, and had to be paid for before delivery could be obtained from the carrier. It proved below grade from first to last.
On receiving same, plaintiff’s mode of proceeding was the same with every shipment. As each was received, plaintiff would take a sample, have same tested and analyzed, and notify defendant by telegram and by letter of the shortcoming- at the same time making a claim for the difference in value, and suggesting arbitration in accordance with the contract; also inclosing for defendant’s signature a written agreement to submit to arbitration. Simultaneously plaintiff would transmit to the secretary of the Memphis Merchants’ Exchange a sample of the oil and all requisite papers for arbitration, in accordance with the contract.
In response to the notification with regard to the first tank received, defendant instructed plaintiff to “Please make close investigation and report each shipment taking sam/ple from each tank and oblige.”
On November 2d, on receipt of the second shipment, plaintiff sent defendant the following telegram:
“Tank one sixty received. Quality in our judgment off. Shall we draw sample and send Memphis for arbitration. Must have immediate definite understanding or cannot continue paying drafts covering off oil.”
In response defendant telegraphed:
“Our samples are prime according to association rules. Make us report on each shipment in your report of same. Also taking sample. Hurry five tanks yesterday purchase.”
To this plaintiff answered:
“How do you know your samples are prime according Inter-State rules. Our contract with you is specific. Any difference subject arbitration Memphis. If your oil • is prime committee will so find and that will end the matter. Now, be reasonable and carry out your contract and prevent trouble and annoyance to both you and ourselves.”
This was on the 2d of November. On the 4th, other tanks having been received and found unsatisfactory, plaintiff telegraphed:
“Regarding twenty one twenty received. Not willing accept off oil on contract unless you agree submit disputes to arbitration committee to state allowance should they find quality not according contract”
*841 On the same day, November 4th, plaintiff wrote to the brokers who had sold the oil for defendants as follows:
“We beg to enclose herewith copy of telegrams and correspondence we have had with Shreveport C. O. Co. regarding off quality of K. R. Co. 820, 2120, and 160 all of which explains itself. We are not willing to continue paying their drafts until we have some kind of a definite and satisfactory understanding with them. We do not propose to accept this off oil until we have had some definite understanding with them, nor do we propose to pay their drafts, unless we have some absolute assurance that they will arbitrate in strict accordance with their contracts. We are willing to accept off oil in lieu of prime on contract on the proper allowance which we are willing to have arbitration committee name.
“Kindly take the matter up at once as you will note up to the present time we have not been able to get any kind of satisfactory information from them.”
On the same day, the 4th, plaintiff telegraphed: “Telegram received. We understand we are to accept the oil, empty tanks and retain samples and should we not be able agree upon allowance you agree to arbitrate on quality. Committee to name allowance. Answer quick whether or not our understanding is correct.”
And defendant answered: “Telegram received. If we c.annot agree on allowance will arbitrate.”
On the 14th November, defendants had not yet signed and forwarded any of the agreements for arbitration sent to them by plaintiff. In reply to a telegraphic remonstrance on the subject, defendants wrote that they had a right to submit and have considered by the arbitration committee the samples taken by themselves from the oil before shipment. Plaintiff consented to amend the agreements so as to let the samples be considered, but still insisted that according to the contract the test should be from the samples taken after the oil had reached destination.
Here came the real difference between the parties. While defendants were reluctant to incur the expense of an arbitration, they never absolutely refused to arbitrate, only they insisted that their own samples, taken from the oil before shipment, should “have" the same consideration” as the samples taken by plaintiff after the oil had reached destination.
It is clear that, under the terms of the contract, defendant had no right to submit any samples except such as had been taken after the oil had reached destination. If, from having been put in unclean tanks, or from any other cause, the oil had deteriorated between shipment and delivery, the responsibility lay with defendant. The contract called for a guaranty of weight and quality at point of destination.
We do not give the correspondence in full, but only the beginning — a very small, almost an infinitesimal, portion thereof; enough, however, to convey an idea of the substance and general drift of it.
The ’ defendants were fully and promptly advised of the shortcoming of the oil, and had full opportunity to take and submit samples, if they had chosen to do so. Instead of this, they instructed plaintiff to take samples. Plaintiff did so in every instance, and is now entitled to have the controversy decided upon the samples so taken.
In every instance plaintiffs had to pay for the oil before they could obtain the delivery of it, and take a sample from it for examination. Some of the oil thus received and paid for, plaintiffs refused to keep, but had same sold for the account of defendant. This was done, however, only after due notice to defendant. To take the place of the oil thus sold, plaintiff bought other oil of the grade called for by the contract.
The present suit is to recover by way of damages the difference between the market value of the oil received, and the value of *843 oil of the grade called for by the contracts, and, where the oil was not kept, but was sold for account of defendant, the difference between the amount for which the oil was sold and the price paid for the oil which was bought to take its place, and also the expenses attending the transaction. A detailed account of these damages is annexed to the petition, and its correctness is testified to.
The Memphis Exchange refused to entertain the arbitration on the condition of having to consider the samples submitted by defendant. It wrote to defendant as follows:
“The agreements for arbitration are not in proper shape for submission to the arbitration committee you having changed them without the knowledge and consent of the Kentucky Refining Oo.
“While the rules of the Exchange say that in case of contention the arbitration committee may consider samples submitted by the seller, as a matter of fact the committee never has seriously considered samples where the contract calls for weight and quality guaranteed at destination. You can if you so desire submit your samples ‘accompanied by affidavit properly drawn and sworn to’ but in my opinion this will only put you to a useless expense.
“Should the Kentucky Refining Oo. agree to the insertion which you have made in the agreement I do not believe the committee would undertake to decide the controversy in that shape, for the reason that should there be a difference between your samples and those of the Kentucky Refining Oo. a decision that would be just to both parties could not be made.
“The committee argue and I agree with them that a just decision on a contract which provides the weights and quality are guaranteed at destination can only be reached by taking into consideration a sample of the oil actually delivered.”
Failing to induce the Memphis Merchants’ Exchange to consider the samples taken before shipment, defendants sent the same to a competent chemist and had same analyzed, and have annexed to their answer the result of the analysis. Reasoning from this analysis, defendants insist that the difference in the quality of the oil was not such as justified plaintiff in rejecting it, and that, according to the analysis, there is due plaintiff an amount much smaller than that claimed.
Had defendants followed the contract, and taken samples at destination, and submitted the matter to arbitration, they would have complied with their contract and avoided this suit. They insisted upon a different course. They made a mistake, and must abide the consequences.
So far as we can see, the account sued on is correct.
One hundred and forty-three typewritten pages of telegrams and letters have been dumped upon the court in this case, without any attempt at order, either with reference to date or subject-matter; thereby entailing upon the court a large amount of tedious work that could have been avoided by a very little care on somebody’s part. Whether the fault lies with the notary who took the depositions of plaintiff’s witnesses, or with plaintiff’s counsel, or with the clerk of court, cannot be ascertained. Had it been clear that either of the latter was to blame, the transcript would have been sent back to be more methodically arranged.
It is ordered, adjudged, and decreed that the judgment appealed from be set aside, and that there be judgment in favor of plaintiff and against defendant for the sum of $3,-750.74, with legal interest thereon from this date, and that defendant pay the costs of both courts.
LAND, J., recused.